IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN J. LUKAS,

                Petitioner,                        REPORT AND
   v.                                      RECOMMENDATION

BRADLEY HOMPE, Warden,                    08-cv-429-bbc
Stanley Correctional Institution,

                Respondent.

---

## REPORT

Before me for report and recommendation to the district court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by John Lukas, an inmate at the Stanley Correctional Institution. Petitioner challenges his confinement resulting from his April 28, 2004 conviction in the Circuit Court for Dane County for stalking, threats to injure/accuse of a crime, intimidating a victim, obstructing an officer and bail jumping. He contends that he is in custody in violation of the laws and Constitution of the United States because there was insufficient evidence to support his stalking conviction and because his trial counsel was ineffective for 1) revealing confidential and false information to the court, resulting in a longer sentence and 2) failing to impeach the complaining witness's testimony regarding the stalking and victim intimidation charges. Because the state courts did not apply clearly established federal law in an unreasonable manner or make unreasonable determinations of fact in denying petitioner's claim, I am recommending that the court deny the petition.

In a decision and order entered on January 4, 2006, the Circuit Court for Dane County set forth detailed factual findings concerning the events leading up to petitioner's arrest and conviction. *State of Wisconsin v. Lukas*, Dec. and Order, Case Nos. 03 CF 698 and 03 CF 2177, attached to Resp. to Pet., dkt. 17, exh. G. Pursuant to 28 U.S.C. § 2254(e), state court findings of fact are presumed correct unless the petitioner rebuts them with clear and convincing evidence. Petitioner disputes some of the court's factual findings. However, for the reasons discussed below, he has not made the showing required under § 2254(e). Accordingly, the state circuit court findings of fact are incorporated by reference as if fully set forth herein. In addition, the following facts are drawn from the state court record:

## I.  FACTS

### A.  Charge and Sentencing

Petitioner was charged in two separate cases in the Circuit Court for Dane County on a number of counts related to conduct directed toward his former girlfriend, Julie Sternal, during 2002 and 2003. The cases were tried together and consolidated on appeal. Dane County Case Nos. 03 CF 698 and 03 CF 2177. Dkt. 17, Exh. K at 2. Attorney David Hart represented petitioner at the preliminary hearing and arraignment. On January 5, 2004, the day scheduled for either trial or a plea, Hart moved to withdraw as petitioner's counsel, explaining that his relationship with petitioner had deteriorated to the point that they could no longer work together. *Id.* at 8. Hart told the court that:

> This is not privileged information, because this has been shared with several individuals on Mr. Lukas' account now. But Mr. Lukas has obtained my – had obtained my non-published non-listed home phone number and called me collect

2

> several times at my house, terrorizing my son – my sons, my wife.  I came up to
> this jail and asked Mr. Lukas not to call me at home.  . . . I received several calls
> afterward at my home, and we had to change our number.  That's why I'm getting
> off this case.

Dkt. 17, Exh. O at 9-10.  The court permitted Hart to withdraw and continued the trial,

blaming the delay on petitioner's behavior.  *Id.* at 20-21.

Attorney Christopher Duren took over as petitioner's counsel at trial and sentencing.  At

trial on April 27, 2004, several witnesses testified, including Sternal, several of her friends and

petitioner.  Other evidence included several photographs, cell phone records, telephone call logs

and a tape recording of a telephone conversation between Sternal and petitioner.  Dkt. 17, Exh.

P.  On April 28, 2004, a jury found petitioner guilty in case no. 03-CF-698 of stalking Sternal

between January 28 and March 21, 2003.  It also found petitioner guilty in case no. 03-CF-2177

of threats to injure/accuse of a crime, intimidating a victim, obstructing an officer, stalking

Sternal between August 27 and September 10, 2003 and six counts of bail jumping.  The circuit

court sentenced petitioner on June 30, 2004 to a total of 10 years in prison and 21.5 years

extended supervision, 5.5 years of which was to be served concurrently.  Dkt. 1, App. A at 1-15.

At the sentencing hearing, Duren told the court that the presentence investigation report

referred to petitioner finding Hart's home telephone number.  Duren stated that when he took

over the case, he called Hart's former law firm and was given his home phone number.  The

court indicated that it knew that a member of Hart's former law firm had given petitioner the

number.  Sentencing hearing tr., dkt. 17, exh. R at 4-5.  At the beginning of the state's

argument, the prosecutor clarified that the reason the law firm gave out Hart's number was

because petitioner was relentless in calling the office.  *Id.* at 5-6.  Petitioner presented evidence

showing the court that he called Hart only seven times:  one call was answered and six were picked up by the answering machine.  *Id.* at 49.

In sentencing petitioner, the circuit court noted the emotional and physical violence that he had perpetrated on Sternal and those around her.  The court further recounted the emotional effects and continuity of petitioner's behavior.  The court assessed petitioner as dangerous to the community at large and to any woman with whom he may become romantically involved.  The court found that petitioner had a propensity for doing serious harm to someone without thinking about it.  Given the above and petitioner's refusal to take responsibility for his actions, propensity to blame and manipulate others, lack of gainful employment, bail jumping, fractured family relationships and unwillingness to financially support his children, the court determined that incarcerating petitioner would best protect the community, deter him and others from committing similar crimes and offer him a means of rehabilitation.  The court stated that probation would diminish the seriousness of petitioner's actions.  Dkt. 17, Exh. R.  The court mentioned the incident with Hart only twice.  It made a passing reference to Hart's withdrawal, and after acknowledging the list of phone calls from the jail to Hart's home, it noted that Hart had explained the level of discomfort and fear that he and his family had with the phone calls. *Id.* at 54, 57-58.

## B. *Machner* Hearing

Through Attorney John Pray, petitioner filed a postconviction motion on February 28, 2005, raising in part the claims that are the subject of his habeas petition.  On June 3, 2005, the circuit court held a hearing at which Hart, Duren and petitioner testified.  Dkt. 17, Exh. G at

4

9.  Hart testified that petitioner called his home collect several times on a day in December 2003.  He stated that both he and his wife answered the phone but did not accept several of the calls.  Hearing Tr., dkt. 17, exh. S at 13-15.  Hart testified that when he did talk with petitioner, petitioner cursed and yelled but did not threaten to harm anyone.  Although Hart's wife never spoke with petitioner, she and their young children overheard Hart's agitated conversation with him.  Hart stated that even after he had told petitioner over the phone and in person not to call his house anymore, petitioner called him several times.  Hart testified that the nature and number of calls and petitioner's refusal to stop making them caused him to fear for his and his family's physical safety.  *Id.* at 39.  Hart testified that petitioner never gave him permission to tell the court or pre-sentence investigator that petitioner was terrorizing his family.  *Id.* at 20-25, 33.  He felt compelled to tell the court about the phone calls because he thought that it would want to know why he was asking to withdraw as petitioner's attorney.  *Id.* at 50.

Duren testified that at trial, he questioned Sternal about the May 21, 2003 letter to the judge in which she requested that the restraining order against petitioner be dropped.  Sternal admitted on cross examination that she had seen petitioner after the issuance of the restraining order in March 2003 but before she wrote the letter to the court.  However, in the letter, Sternal wrote that petitioner had not had any contact with her since the issuance of the restraining order.  Although Duren admitted that this showed that Sternal was less than truthful to the court, he explained that impeaching her with this evidence only would have emphasized the fact that petitioner had violated the restraining order.  Duren also stated that not further examining the discrepancy allowed him to point out in his closing argument that petitioner did not violate the restraining order.  Dkt. 17, Exh. S at 69-73.

5

Sternal had testified at trial that she had been driving the car on March 21, 2003, when she and her friend arrived at her apartment and found petitioner waiting. When asked why he did not impeach Sternal with her later police statement that her friend had been driving, Duren testified that he did not recall if he had a reason or not. Dkt. 17, Exh. S at 73-83. Duren testified that he listened to all of the tapes of telephone conversations that took place during September 2003 between Sternal and petitioner, who was incarcerated at the Dane County Jail at the time. Duren testified that he did not admit into evidence the recording of the September 8, 2003 call, in which Sternal said "I love you," because he thought that he would be required to admit the remainder of the recording, which was not helpful to petitioner's case. *Id.* at 86-90. Duren testified that he admitted into evidence a recording of petitioner's September 10, 2003 conversation with Sternal. He agreed that when Sternal stated in the conversation that "he threatened me," she most likely was referring to a public official who was pressuring her to press charges against petitioner. However, Duren testified that the statement was not worth introducing on cross examination and irrelevant given Sternal later testified of her own free will at trial. *Id.* at 90-92, 114. Duren did not recall why he did not impeach Sternal with phone records showing that she received substantially fewer phone calls from petitioner on January 28 and March 21, 2003 (the period related to the first stalking charge) than she had claimed. *Id.* at 92-95.

Petitioner testified that when he was at the Dane County Jail, Peter Steinberg, Hart's former law partner, brought him a post-it note with Hart's cell phone number and unpublished home phone number. Steinberg told him that these were the only numbers that he could reach Hart at because Hart had left the law firm. Petitioner testified that he called Hart collect at

6

home less than ten times, but only two calls were answered and rejected.  Petitioner stated that
he spoke with Hart on his home phone only once.  Hart was irritated at him for calling.
Petitioner testified that he never spoke with Hart's wife or children or threatened Hart.  He
stated that he may have casually used profanity in place of adjectives.  On the same day as the
phone call, Hart went to see petitioner at the jail and told him not to call his home.  Petitioner
testified that he never called Hart at home after that.  Dkt. 17, Exh. S at 118-122.  Petitioner
testified that he never gave Hart permission to tell the court that he was terrorizing Hart's family
or speak with the author of the presentence investigation report.  *Id.* at 123-24.

## C.  State Court Decisions

On January 4, 2006, the circuit court denied petitioner's postconviction motion.[1]  With
respect to petitioner's stalking charge in case no. 03 CF 2177 (August-September 2003), the
court found that the jury reasonably could have inferred from Sternal's testimony and a
videotaped conversation between her and petitioner that she feared physical harm from
petitioner and carried her fear throughout her relationship with him, including being afraid of
what he would do to her upon his release from jail.  The court reasoned that the jury understood
that Sternal had conflicting feelings about petitioner but concluded that petitioner's abusive
treatment instilled a fear in her that he would become violent if she failed to do his bidding.

---

[1]  Although I have summarized the trial court's findings below, the court included a thorough
discussion of the evidence relevant to each claim in its decision and order, which is attached to this report
and recommendation.

The court rejected petitioner's argument that no reasonable jury could conclude that he had the required "continuity of purpose" because the alleged continuity was "broken" by Sternal's willingness to speak with him and expressions of affection for him.  The court noted that petitioner failed to cite legal authority for his definition of "continuity of purpose" and that neither the stalking statute, Wis. Stat. § 940.32(1)(a), nor case law defined the term.  The court found that the statute clearly implied that the "purpose" was one of intimidation.  It reasoned that even if Sternal's conduct was voluntary, it did not mean that she was not intimidated or that the jury could not find that petitioner's conduct was intimidating.  Dkt. 17, Exh. G at 17-23.

The court analyzed each of the errors that petitioner alleged Duren committed in failing to impeach Sternal's credibility at trial pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The court did not determine that Duren's performance was deficient and concluded that even if he had impeached Sternal in the ways that petitioner wanted him to, the jury would not have doubted her credibility.  Accordingly, the court found that the alleged errors, either individually or cumulatively, did not result in prejudice to petitioner.  Dkt. 17, Exh. G at 23-34.

Finally, the court rejected petitioner's argument that Hart was ineffective for disclosing allegedly confidential information about phone calls from petitioner, resulting in a harsher sentence on the second stalking charge.  The court analyzed the claim under the prejudice prong of *Strickland*, finding that it properly exercised its sentencing decision, addressed all of the relevant sentencing factors at length and referred to the incident with Hart only briefly at the sentencing hearing.  Dkt. 17, Exh. G at 40-44.

Petitioner appealed. On March 22, 2007, the Wisconsin Court of Appeals affirmed the decision of the circuit court. The court first addressed petitioner's claim that the evidence was insufficient to support his second stalking conviction for the period of August 27 to September 10, 2003. It noted that petitioner argued that various evidence could have allowed the jury to reach a different conclusion on three elements of the stalking charge. However, the court found that petitioner failed to take into account the standard of review for claims of insufficient evidence. Dkt. 17, Exh. K at 2 (citing *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990) (verdict affirmed unless evidence viewed most favorably to state and conviction so lacks probative value and force that no reasonable trier of fact could find guilt beyond reasonable doubt). It noted that even though there was evidence that could be interpreted as showing that their relationship was going well, other evidence (including petitioner's past conduct and actions during the charged period) supported a finding that Sternal reasonably feared injury or death. The court rejected petitioner's argument that because he was in jail, he did not pose a threat to Sternal. The court reasoned that Sternal's fear was reasonable because petitioner's incarceration was not expected to be permanent at the time and petitioner had told Sternal that if she did not take a certain action, "there's going to be fucking hell to pay when I get out." *Id.* at 2-3.

With respect to Duren's alleged ineffective assistance for failing to impeach Sternal, the appellate court found that even if all of the alleged errors constituted deficient performance, petitioner failed to show that he was prejudiced as a result. The court reasoned that many of the issues raised by petitioner were either unrelated to the main issue at trial or redundant to other evidence and would have supported only a general attack on Sternal's credibility. The court noted that the jury had the opportunity to evaluate Sternal's credibility directly. Further,

the court found that in addition to Sternal's testimony, other more objective evidence, such as recordings of various telephone conversations, supported the jury's verdict.  Dkt. 17, Exh. K at 6-7.

The appellate court found that petitioner failed to develop an argument as to why Hart was ineffective for explaining to the court why he wished to withdraw as counsel or to discuss the phone calls with the pre-sentence report writer.  The court also was not persuaded by petitioner's conclusory argument that it was "fair to presume" that Hart's discussion of the phone calls "made a difference" in sentencing.  Instead, the court of appeals found that it was appropriate and relevant to accept the circuit court's assertion that it did not rely on allegedly inaccurate sentencing information.  Dkt. 17, Exh. K at 7-8.

The Wisconsin Supreme Court denied the petition for review on September 10, 2007.  Petitioner filed the instant petition on July 25, 2008.


## II.  ANALYSIS

### A.  Legal Framework

Pursuant to 28 U.S.C. § 2254(d), this court must accord special deference to the conclusion reached by the state court of appeals.  *See Simelton v. Frank*, 446 F.3d 666, 669 (7th Cir. 2006) (when applying statute, federal court reviews decision of last state court that ruled on merits of petitioner's claims).  Specifically, this court may not grant petitioner's application for a writ of habeas corpus unless the state court's adjudication of his claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" federal law when the state court applies a rule that "contradicts the governing law set forth by the Supreme Court," or when an issue before the state court "involves a set of facts materially indistinguishable from a Supreme Court case," but the state court rules in a different way. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "'A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular petitioner's case' qualifies as a decision involving an unreasonable application of clearly established federal law." *Id*. (quoting *Williams*, 529 U.S. at 407-08). An "unreasonable" state court decision is one that is "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

In a case involving a flexible constitutional standard, a state court determination is not unreasonable if the court "takes the rule seriously and produces an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). *See also Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996) ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored."), *reversed on other grounds*, 521 U.S. 320 (1997). The reasonableness inquiry focuses on the outcome and not the reasoning provided by the state court. *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). A decision that is at least minimally consistent with the facts and

circumstances of the case is not unreasonable.  *Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002).

Under § 2254(e)(1), the state court's findings of fact are presumed correct, and it is the petitioner's burden to show by clear and convincing evidence that the state court's factual determinations were objectively unreasonable or incorrect.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002).  "[T]he level of deference given state court factual findings on habeas review is exceptionally high."  *Baird v. Davis*, 388 F.3d 1110, 1124 (7th Cir. 2004) (citing *Lindh*, 521 U.S. at 333 n.7).

## B.  Sufficiency of Evidence

Petitioner alleges that the evidence adduced at trial was insufficient to support his conviction for stalking in case no. 03 CF 2177, which related to his conduct toward Sternal while he was incarcerated on a traffic charge between August 27 and September 10, 2003.  The statute under which petitioner was charged and convicted provides:

Whoever meets all of the following criteria is guilty of a Class I felony:

(a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

(b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

12

Wis. Stat. § 940.32(2).  Petitioner admits that made over sixty phone calls to Sternal during the relevant time period.  However, as he did in the court of appeals, petitioner argues that the state failed to prove that his conduct satisfied the remaining statutory criteria, particularly that Sternal reasonably feared bodily injury or death.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court enunciated the standard for evaluating challenges to the sufficiency of the evidence to support a conviction: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Addressing petitioner's claim on appeal, the state court of appeals explained that it would affirm the verdict "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that no reasonable trier of fact could have found guilt beyond a reasonable doubt."  Dkt. 17, Exh. K (citing *Poellinger*, 153 Wis. 2d at 501).

Petitioner attempts to show that the rule applied by the state appellate court in adjudicating his sufficiency-of-the-evidence claim is "contrary to" the *Jackson* standard.  He points out that the court in *Poellinger*, 153 Wis. 2d at 501, stated that the evidence presented at trial must be sufficiently strong and convincing to exclude every reasonable hypothesis consistent with the defendant's innocence.  Although the court did make this statement, petitioner's argument is misplaced.  In the passage quoted by petitioner, the Wisconsin Supreme Court merely was discussing the standard of proof in criminal trials and not the test on appeal. *Id.* at 503 (exclusion of every reasonable hypothesis of defendant's innocence is "not the test on appeal").  In fact, the state supreme court discussed this very issue at length, noting that it had

13

"often failed to maintain the appropriate distinction between the applicability of the hypothesis of innocence rule at the trial court level and the applicability of the reasonable doubt standard of review on appeal." *Id.* at 504.  Accordingly, the court of appeals did not apply a standard contrary to *Jackson* in petitioner's case.  *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) (state court need not even be aware of Supreme Court precedents so long as neither the reasoning nor result of state court decision contradicts them).

Petitioner asserts that he could not be convicted of stalking because during the relevant period, Sternal voluntarily visited him and accepted phone calls from him in which she repeatedly expressed her love for him; Sternal never testified that she feared that petitioner would harm her during this period; and there was no evidence that petitioner actually threatened to harm Sternal during this period.  The state appellate court found that even though there was evidence that could be interpreted as showing that petitioner's relationship with Sternal was going well, other evidence (including petitioner's past conduct and actions during the charged period) supported a finding that Sternal reasonably feared injury or death.  The court rejected petitioner's argument that just because he was in jail, he did not pose a threat to Sternal.  The court reasoned that Sternal's fear was reasonable because petitioner's incarceration was not expected to be permanent at the time and petitioner had told Sternal that if she did not take a certain action, "there's going to be fucking hell to pay when I get out." *Id.* at 2-3.  I do not find the appellate court's conclusions unreasonable.

In its decision, the circuit court found that petitioner had a history of violence against Sternal, including the following:

- On June 2, 2003, petitioner physically hurt Sternal, forcibly restrained her and prevented her from leaving his residence for several hours.

- When Sternal tried to break up with petitioner in December 2002, he harassed her with repeated phone calls to her work and home.

- Petitioner entered Sternal's security locked building on January 28, 2003 and waited at the front door of her apartment until she returned home.

- At around 4:00 a.m. on March 15, 2003, Sternal awoke in her apartment to find petitioner standing over her bed. He was angry that she had not returned his phone calls and wanted to know whom she had been with. Frightened and not knowing what to do, Sternal went back to sleep. She awoke in the morning to find that petitioner had deleted all of the phone numbers stored in her cell phone and taken cash from her wallet.

- On the evening of March 20, 2003, petitioner continually called Sternal at work. When Sternal later left work with a co-worker, petitioner confronted them, grabbed Sternal's keys and got in a scuffle with the co-worker.

- Sternal obtained a restraining order against petitioner on March 21, 2003. Petitioner called Sternal and her co-workers numerous times at her workplace that day. Sternal's manager called the police later that day.

- After Sternal and petitioner resumed their relationship in May 2003, petitioner threatened to destroy the property that Sternal had at his house unless she dropped the charges against him for the previous incidents.

- On September 10, 2003, while confined in county jail for failure to pay child support, a sheriff's aide observed petitioner loudly tell Sternal in an agitated voice that she was the reason he was in jail and that she needed to retract her statements to the district attorney. During his jail stay, petitioner called Sternal numerous times and threatened her.

Petitioner disputes these factual findings, arguing that Sternal was not a credible witness, her testimony was often conflicting and telephone logs indicate that he did not call her as often as she claimed. However, this court must defer to the factual findings of the state courts unless petitioner comes forth with "clear and convincing evidence" showing that the state court determination was erroneous. *Hinton v. Uchtman*, 395 F. 3d 810, 819 (7th Cir. 2005); *Ward v.*

*Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003).  Petitioner has no such evidence.  The evidence he presents to support his claim consists of the same allegations that the state courts rejected as incredible (*see* section C1 below).  A review of the trial transcript does not reveal that the state court's credibility determinations were objectively unreasonable.  At most, Sternal admitted to having conflicting feelings toward petitioner throughout the relevant period.

Viewed in a light most favorable to the prosecution, the evidence of record was sufficient to allow the jury to find beyond a reasonable doubt that petitioner engaged in a course of conduct that he knew would cause a reasonable person to fear bodily injury and his actions did in fact cause Sternal such fear.  The state courts reasonably concluded that Sternal feared physical harm from petitioner and carried her fear throughout her relationship with him, including being afraid of what he would do to her upon his release from jail.  The facts that Sternal loved petitioner, continued to have sexual relations with him, visited him in jail and accepted his phone calls do not negate this inference.  As the state courts reasoned, the jury apparently understood that Sternal could love and fear petitioner simultaneously.

## C.  Ineffective Assistance of Counsel

In order to establish his ineffective assistance of trial counsel claims, petitioner must prove that:  1) his attorney's performance fell below an objective standard of reasonableness; and 2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The defendant "bears a heavy burden when seeking to establish an ineffective assistance of counsel claim."  *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (quoting *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir. 1994)).  To satisfy the first prong of the *Strickland* test, the performance

16

element, a defendant must identify the acts or omissions of counsel that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690; *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988). A court's review of counsel's performance is highly deferential, presuming reasonable judgment and declining to second-guess strategic choices. *Strickland*, 466 U.S. at 689; *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). With regard to the second prong, the prejudice element, "the defendant must show that there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Moya-Gomez*, 860 F.2d at 764.

## 1.  Sternal's Credibility

As he did in the state courts, petitioner alleges that his trial counsel, Duren, was ineffective for failing to impeach Sternal with the following:

1. Call logs showing that petitioner did not call Sternal as many times as she claimed from January 28 to March 20, 2003.

2. Sternal's March 21, 2003 statement to the police that Karl Granberg had driven the car to her apartment that evening. (At trial, Sternal testified that she had been driving).

3. Sternal's May 21, 2003 letter to the court in which she asked to have the temporary restraining order against petitioner dropped. Sternal wrote in the letter that petitioner had had no contact with her since the order was issued on March 31, 2003. (At trial, Sternal testified that she saw petitioner consensually after that date).

4. Sternal told petitioner in recorded phone calls that someone else had threatened her.

5. A recording of a September 8, 2003 phone conversation in which Sternal told petitioner that she loved him.

Following a *Machner* hearing, the circuit court analyzed each of the errors that petitioner alleged Duren committed in failing to impeach Sternal's credibility at trial pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The court did not determine that Duren's performance was deficient and concluded that even if he had impeached Sternal in the ways that petitioner wanted him to, the jury would not have doubted her credibility. Accordingly, the court found that the alleged errors, either individually or cumulatively, did not result in prejudice to petitioner. The state court of appeals agreed, finding that even if all of Duren's alleged errors constituted deficient performance, petitioner failed to show that he was prejudiced as a result. The appellate court reasoned that many of the issues raised by petitioner were either unrelated to the main issue at trial or redundant to other evidence and would have supported only a general attack on Sternal's credibility. The court noted that the jury had the opportunity to evaluate Sternal's credibility directly and that there was other, more objective evidence (such as recordings of various telephone conversations) supporting the jury's verdict.

The court's conclusion is not unreasonable and is not contrary to the standard set out in *Strickland*. There is no evidence that Duren's performance fell below an objective standard of reasonableness or prejudiced the defense. At the *Machner* hearing, Duren gave good reasons for not impeaching Sternal with most of petitioner's cited evidence:

- Sternal's untruthful statement to the court would have emphasized the fact that petitioner had violated the restraining order.

- Using Sternal's recorded statement that she loved petitioner would have required him to admit the remainder of the recording, which was not helpful to petitioner's case.

18

- Sternal's recorded statement that a public official statement threatened her was not worth introducing on cross examination and irrelevant given Sternal later testified of her own free will at trial.

Petitioner's disagreement with his attorney's trial strategy does not prove that his counsel was ineffective. *Strickland*, 466 U.S. at 689.  It is reasonable to conclude that Duren's use of the above evidence to impeach Sternal was riskier than his failure to impeach her.

Although Duren did not recall whether he had a good reason for not impeaching Sternal with the police statement, that evidence is peripheral to the central facts of the crime of stalking. *Jones v. Wallace*, 525 F.3d 500, 503-04 (7th Cir. 2008) (unifying theme in cases in which ineffective assistance found for failure to impeach is that overlooked impeachment involved facts central to actual crime.)  Whether Sternal was driving the car on the night that petitioner harassed her and her co-worker does not dispute the central fact of petitioner's stalking of Sternal. *Id.* at 504.  Duren also did not recall why he did not impeach Sternal with the call logs. However, a review of the trial transcript shows that Duren at least was aware of the importance of Sternal's telephone records.  While cross examining Sternal, he used the logs to attempt to show that she had made several calls to petitioner during the relevant period.

In any event, even if Sternal lied to police about one fact or overstated the number of calls that she received from petitioner, those facts would not compel a finding that she was incredible.  The state courts reasonably could conclude from the totality of Sternal's testimony and the recorded telephone calls that Sternal was a more credible witness than petitioner.  Thus, the state courts did not err in concluding that petitioner was not prejudiced by the alleged deficiencies in Duren's performance.

## 2.  Release of Confidential Information

The circuit court rejected petitioner's argument that Hart was ineffective for disclosing allegedly confidential information about phone calls from petitioner, resulting in a harsher sentence on the second stalking charge.  Defendants have a due process right to be sentenced on the basis of accurate information.  *U.S. v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  A sentencing court may consider a broad range of information in the sentencing process, provided that the evidence contains a "sufficient indicia of reliability." *U.S. v. Polson*, 285 F.3d 563, 568 (7th Cir. 2002).  However, a sentence must be set aside where petitioner can show that the sentence was based in part on false information.  *U.S. v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006); *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984).  In order to make this showing, petitioner must establish that the information before the court was inaccurate and that the court relied on this inaccurate information in passing sentence.  *Lechner v. Frank*, 341 F.3d 635 (7th Cir. 2003).

The court analyzed the claim under the prejudice prong of *Strickland*, finding that it properly exercised its sentencing decision, addressed all of the relevant sentencing factors at length and referred to the incident with Hart only briefly at the sentencing hearing.  The appellate court accepted the circuit court's assertion that it did not rely on allegedly inaccurate sentencing information, noting that petitioner failed to explain how Hart's discussion of the phone calls "made a difference" in sentencing.  This finding was not unreasonable.

I question whether Hart breached his duty to petitioner in disclosing the content of petitioner's threatening phone calls to either the court or the presentence investigator.  At the January 5, 2004 hearing, Hart explained that petitioner had already broken attorney-client

20

privilege by disclosing this information to third parties.  Further, Hart did not tell the court about the threatening calls until it became clear that Hart may not have been allowed to withdraw or that petitioner may not be appointed another trial attorney.

In any event, even if Hart's conduct was deficient, petitioner has not shown that he was prejudiced by the admissions.  A review of the sentencing hearing transcript and the circuit court's postconviction decision confirms that petitioner's calls to Hart were briefly mentioned twice at the hearing and that the court extensively considered several other factors in reaching its decision.  Without more, I cannot say that the appellate court unreasonably accepted the circuit court's assertion that it did not rely on Hart's disclosures during sentencing.  As such, petitioner has not shown that he was prejudiced by any error that Hart may have committed.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully RECOMMEND that the petition of John Lukas for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Entered this 12th day of March, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                                Telephone
STEPHEN L. CROCKER                                                                              (608) 264-5153
U.S. Magistrate Judge

March 13, 2009

John J Lukas
Stanley Correctional Institution
100 Corrections Dr.
Stanley, WI 54768-6500

Gregory M. Weber
Wisconsin Department Of Justice
P.O. Box 7857
Madison , WI 53707

Re:___Lukas v. Hompe
Case No. 08-cv-429-bbc

Dear Mr. Lukas and Attorney Weber:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before March 27, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by March 27, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:      Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**